■ WORTH CONSTRUCTION CO. INC., Appellant, v ADMIRAL INSURANCE COMPANY et al., Respondents. [836 NYS2d 155]—

Order and judgment (one paper), Supreme Court, New York County (Helen E. Freedman, J.), entered June 20, 2005, which, upon renewal, modified a prior order and judgment (one paper), same court and Justice, entered January 5, 2005, to declare that defendants Admiral Insurance Company and Farm Family Casualty Insurance Company are not obligated to defend, indemnify or reimburse plaintiff in an underlying personal injury action, modified, on the law, to declare that Farm Family is so obligated, and otherwise affirmed, without costs. Appeal from the January 5, 2005 order and judgment unanimously dismissed, without costs, as superseded by the appeal from the June 20, 2005 order and judgment.

Plaintiff Worth Construction, a Connecticut corporation, was general contractor on a construction site in White Plains. Defendant Admiral insured subcontractor Hackensack Steel, a New Jersey corporation; defendant Farm Family insured subcontractor Pacific Steel, hired by Worth to build a staircase.

Both Admiral's and Farm Family's policies contain additional insured endorsements covering Worth for liability arising out of their respective insured's operations at the White Plains project and requiring notice of the claim as soon as practicable.

The injured worker, who was employed by a sub-subcontractor of Hackensack that was also a named insured on the Admiral policy, brought the underlying action against Worth in Westchester County for injuries allegedly sustained when he slipped on the stairs built by Pacific. It appears that at the time of the accident, Pacific had finished installing the metal pans on the stairs and was not scheduled to come back to the site to put up handrails until other trades had filled in the metal pans with concrete. It further appears that in the underlying Westchester action, Worth formally admitted that no negligence on Pacific's part contributed to the accident, resulting in Pacific's dismissal from the underlying action.

Under New York law, Worth's notice of the accident to Admiral almost 15 months after learning of the accident was late as a matter of law (*see Heydt Contr. Corp. v American Home Assur. Co.*, 146 AD2d 497, 499 [1989], *lv dismissed* 74 NY2d 651 [1989]). Indeed, Worth does not argue otherwise, but rather that under governing New Jersey law, Admiral could not disclaim for lateness unless it was prejudiced. Admiral responds that New York law governs, under which it could disclaim for lateness even if it were not prejudiced (*see Argo Corp. v Greater N.Y. Mut. Ins. Co.*, 4 NY3d 332 [2005]).

In deciding which law to apply, the motion court correctly found the center of gravity (*see generally Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.]*, 81 NY2d 219, 225-226 [1993]) to be in New York, where the subject construction site was located and the underlying personal injury action is being litigated, not New Jersey, where Admiral issued its policy to Hackensack. *Regional Import & Export Trucking Co. v North Riv. Ins. Co.* (149 AD2d 361 [1989]) is distinguishable. There, the policy, as here, was issued by a New Jersey insurer to a New Jersey corporation, but unlike here, the policy insured against losses "happening anywhere," the loss occurred in New Jersey and the plaintiff's underlying liability was litigated in New Jersey. Indeed, the only New York contact in *Regional* was the placing of the policy through a New York broker. Nor should Connecticut law apply based solely on the fact that Worth is a Connecticut corporation.

However, the motion court erred in holding that Worth's admission in the underlying action that Pacific was not at fault precludes Worth from claiming in this action that it is covered

as an additional insured under Farm Family's policy with Pacific. The motion court reasoned that Pacific's dismissal from the underlying action established as a matter of law that the accident did not arise out of any of its operations performed for Worth, as required by the additional insured clause in Farm Family's policy. Overlooked was the language in paragraph 21.b of the policy defining Pacific's work to mean not only "Work or operations performed by [Pacific] or on [Pacific's] behalf," but also "Materials, parts or equipment furnished in connection with such work or operations." Given this definition of Pacific's work, it is immaterial, for purposes of deciding additional insured coverage, whether Pacific had completed its installation of the stairs, whether Pacific's installation of the stairs was negligent, or whether Pacific or a contractor in privity with it was the injured worker's employer. It is sufficient that the injury was sustained on the stairs (*see Impulse Enters./F & V Mech. Plumbing & Heating v St. Paul Fire & Mar. Ins. Co.*, 282 AD2d 266, 267 [2001]). Concur—Andrias, J.P., Buckley and Sweeny, JJ.

Nardelli and McGuire, JJ., concur in part and dissent in part in a separate memorandum by McGuire, J., as follows: I respectfully disagree with the majority's conclusion that defendant Farm Family Casualty Insurance Company (Farm Family) is obligated to defend, indemnify or reimburse plaintiff in the underlying personal injury action, and would affirm Supreme Court's declaration that Farm Family is not so obligated.

Plaintiff Worth Construction Co. (Worth), the general contractor on the construction project, hired Pacific Steel (Pacific) to build the staircase on which the plaintiff in the underlying action, Michael Murphy, an employee of another subcontractor, slipped and fell. In this declaratory judgment action, Worth contends that as an additional insured under the general liability policy issued by Farm Family to Pacific, it is entitled to a judgment declaring that Farm Family is obligated to defend and indemnify Worth with respect to the claim alleged by Murphy in the underlying action.

The additional insured endorsement of the Farm Family/ Pacific policy provides in relevant part as follows: "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you." Under paragraph 21 of the policy, the term "Your work" is defined to mean "(a) Work or operations performed by you or on your behalf; and (b) Materials, parts or equipment furnished in connection with such work or operations."

I agree, or at least am prepared to assume, that the definition of the term "Your work" applies to the undefined term "operations" in the endorsement, so that the latter term also includes "[m]aterials, parts or equipment furnished in connection with such work or operations." Nonetheless, the crucial point is that Worth is an additional insured "only with respect to liability arising out of [Pacific's] operations or premises owned by or rented to [Pacific]."

In the majority's view, the undisputed fact that Murphy slipped and fell on the stairs—i.e., "[m]aterials, parts or equipment furnished in connection with [Pacific's operations]"—provides a sufficient reason to conclude that Farm Family is obligated to defend and indemnify Worth in the underlying action. In my view, the majority's analysis is erroneous, for the reasons stated by Justice Sullivan in his dissenting opinion in *Chelsea Assoc., LLC v Laquila-Pinnacle* (21 AD3d 739, 741 [2005], *lv denied* 6 NY3d 742 [2005]). There, a laborer employed by a subcontractor, Laquila, was injured when he tripped and fell at the job site. The laborer sued, among others, the owner and general contractor, which were additional insureds under the general liability policy issued by Gerling to Laquila. The additional insureds eventually settled with the laborer and, in a third-party action they commenced against Laquila and Gerling, moved for summary judgment for defense and settlement costs incurred in the underlying action. As in this case, the additional insured endorsement amended the policy to include as an insured the person or organization listed in a schedule "but only with respect to liability arising out of 'your work' [i.e., Laquila's work] performed for that insured by you or on your behalf" (21 AD3d at 741 [dissenting op]). According to the majority, Gerling was obligated to defend and indemnify the additional insureds because the injuries sustained by the employee of the named insured, Laquila, "must be deemed as a matter of law to have arisen out of the work" (21 AD3d at 740-741 [internal quotation marks and citation omitted]). Further, according to the majority, "[a]ny negligence by the [additional insureds] is not material to an additional insured endorsement" (*id.* at 741 [citation omitted]).

In his dissenting opinion, Justice Sullivan wrote that the majority's interpretation of the additional insured endorsement: "reads out of the clause the key words pertinent to its application here: *'but only with respect to liability* arising out of "[Laquila's] work"'" (emphasis added). The clause does not extend additional insured coverage for 'your [i.e., Laquila's] work' performed for the named insured, as the majority holds,

but rather only for the additional insured's liability arising out of Laquila's work" (21 AD3d at 742 [dissenting op]). Having bargained for language conditioning its obligation to defend and indemnify on "liability" of the additional insureds "arising out of" the named insured's work, Gerling was "entitled to the benefit of the contractual bargain" (*id.* at 743). In short, in Justice Sullivan's view, "[a]bsent a showing of liability on [the additional insureds'] part arising out of Laquila's work, the additional insured clause is never triggered" (*id.* at 742).

As Justice Sullivan, who was joined by Justice Mazzarelli, also pointed out, our cases construing the same or similar additional insured endorsements have hardly been a model of consistency (*id.* at 742-743). In *BP A.C. Corp. v One Beacon Ins. Group* (33 AD3d 116 [2006], *lv granted* 2006 NY Slip Op 82372[U] [2006]), a recent decision construing an additional insured endorsement indistinguishable from the one in this case and the one in *Chelsea Associates* (*supra*), the panel again was split. In the underlying action, Joseph Cosentino, an employee of Karo Sheet Metal, a subcontractor of BP Air Conditioning Corp., sought to recover for injuries he sustained when he slipped and fell on a patch of oil at the construction site. The oil may have originated from any of a number of subcontractors working on the project, only one of which, Alfa Piping Corp., was a subcontractor of BP. Pursuant to the contract between Alfa and BP, the latter was an additional insured under the general liability policy issued to Alfa by One Beacon Insurance Group's predecessor-in-interest (33 AD3d at 118-119). In a subsequently severed fourth-party action against Beacon, BP sought a declaration requiring Beacon to undertake its defense in the action brought by Cosentino against the general contractor, BP and Alfa, and to reimburse it for past defense costs (*id.* at 119).

The majority held that BP was entitled to such a declaration. According to the majority, "if BP is ultimately held liable to Cosentino, such liability would 'aris[e] out of [Alfa's] ongoing operations performed for [BP]' to the extent the factfinder in the *Cosentino* Action determines that Alfa's negligence in the course of its work as a BP subcontractor was a contributing cause of Cosentino's injuries" (*id.* at 121). Because there was a "reasonable possibility" of such a determination in the underlying action, Beacon was obligated to provide a defense to BP in that action and to reimburse it for defense costs already incurred (*id.*). Of course, a contrary determination in the underlying action also was possible. For example, the oil patch may have been the result not of Alfa's negligence but of the

negligence of one of the other subcontractors. Alternatively, the trier of fact could determine that Alfa's negligence was not a proximate cause of Cosentino's injuries. Nonetheless, the majority held that "[i]t has no bearing on the existence of a duty to defend that it is also possible that Beacon may not be required to pay once the litigation has run its course" (*id.* [internal quotation marks and citation omitted]).

Again, Justice Sullivan dissented, this time joined by Justice Catterson (33 AD3d at 132). "The critical language of the additional insured endorsement at issue"—that "[a] person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured"—establishes "a condition precedent to the triggering of additional insured coverage" (*id.* at 133). That is, BP was required to show that its liability arose from Alfa's ongoing operations performed for BP, or, more concretely, "that the oil that caused Cosentino to slip and fall emanated, in whole or in part, from Alfa's work" (*id.*). Because this material issue of fact could "only be resolved by the factfinder in the *Cosentino* action" and "cannot be summarily determined, as a matter of law," Justice Sullivan concluded that a coverage obligation, either to indemnify or to defend, had yet to be triggered (*id.* at 134).

As for the "oft-stated rule that the duty to defend is greater than the duty to indemnify," Justice Sullivan stressed that "[i]t finds no basis in the policy text" (*id.* at 139). Moreover, the rule " 'is not unyielding but rather one of expedience' " (*id.*, quoting *Kajima Constr. Servs. v CATI, Inc.*, 302 AD2d 228, 229 [2003]). That is, it is born of practical necessity and applies "to protect a party with insurance who, because it is engaged with its insurer in a coverage dispute, would otherwise be without defense coverage in a pending litigation" (*id.*). Apart from the inapplicability of this concern when the additional insured is already being provided a defense by its own insurer, Justice Sullivan noted as well the " 'unseemly' spectacle" (*id.* [citation omitted]) of the insurer for the named insured being required to pay the legal expenses of the additional insured so that the latter can saddle the named insured with the liability in the underlying action (*id.* at 139-140).

With all due respect to the majority in *BP Air Conditioning Corp.* and *Chelsea Associates*, I would, like Justices Mazzarelli and Catterson, agree with Justice Sullivan and his analysis. Accordingly, I would hold that a condition precedent to Farm Family's obligation to defend or indemnify Worth in the underlying action is a determination in that action that Worth is liable

to the plaintiff for his injuries and that its liability "aris[es] out of [Pacific's] operations or premises owned by or rented to [Pacific]." Because there has been no such determination, I would affirm Supreme Court's declaration that Farm Family is not obligated to defend, indemnify or reimburse Worth in the underlying action.

Indeed, this Court should affirm in this respect for a more compelling reason. That is, not only has there been no such determination in the underlying action, there has been a determination in that action that is fatal to Worth's position in this action. As the majority recognizes, in the underlying action "Worth formally admitted that no negligence on Pacific's part contributed to the accident, resulting in Pacific's dismissal from the underlying action." More specifically, as a defendant/third-party plaintiff, Worth asserted causes of action against Pacific for contractual and common-law indemnification, contending that if Worth was liable to the plaintiff for his injuries it was as a result of the work, property or equipment of Pacific. In response to Pacific's motion for summary judgment seeking dismissal of Worth's third-party complaint against it, Worth conceded that "any and all claims contained in [its] Second Third-Party Complaint against Pacific Steel . . . are without factual merit and must be dismissed." Accordingly, the court granted Pacific's motion for summary judgment and dismissed Worth's third-party complaint against Pacific.

As Supreme Court correctly ruled, that determination in the underlying action—that Pacific was not liable to Worth for any liability Worth might have for the plaintiff's injuries— "precludes Worth from coverage under the Farm Family Policy, which only insures Worth 'with respect to liability arising out of [Pacific's] ongoing operations for [Worth].' " Even under the majority's approach in *BP Air Conditioning Corp.*, Worth's claim against Farm Family would be rejected. After all, in concluding that the *possibility* of a determination in the underlying action negating the claim of entitlement by the additional insured to a defense was not sufficient to defeat that claim (33 AD3d at 121), the majority implicitly recognized that the *actuality* of such a determination in the underlying action would defeat the claim. This case, accordingly, presents another unseemly spectacle, that of requiring Farm Family to provide Worth with a defense even though Worth has conceded facts that negate any obligation on the part of Farm Family to provide it with a defense.